## COMMONWEALTH *versus* CHARLES P. SUMNER.

A bill in equity between partners for an account, inserted in a writ of attachment, cannot lawfully be served by arresting the defendant.

Whether a bill in equity under *St.* 1798, *c.* 77, or *St.* 1817, *c.* 87, inserted in a writ of attachment, can lawfully be served by arresting the defenaant, *quære.*

HABEAS *corpus* to the sheriff of Suffolk to bring up John G. Nazro. Upon the return of the writ it appeared that Nazro was arrested and committed to jail at the suit of Caleb Cushing, as administrator of Abel Johnson, formerly of Newburyport, upon a process in the common form of a writ of capias and attachment against Nazro, wherein was inserted a bill in equity setting forth a copartnership heretofore subsisting between Johnson, Nazro and one Brice at Cape Haytien in the island of Hayti, and that the administrator believes that a large sum is due from the firm to Johnson's estate, and praying that Nazro may be restrained by injunction from collecting the partnership debts, that a receiver may be appointed, and that Nazro may be compelled to exhibit the books, &c., and to account, and pay over such sum as may be found due to the estate of Johnson. The officer was directed to hold the defendant to bail in the sum of 10,000 dollars.

An affidavit of Nazro was read, stating that he was a partne of Johnson and Brice at Cape Haytien, previous to March 1827, when Johnson died; that he left Brice at Cape Haytien settling the partnership concerns; that he did not refuse to exhibit the books, &c., but on the contrary requested the administrator to send an agent to Cape Haytien to examine them; that when the affairs of the partnership shall be settled, he will be ready to exhibit an account, and to pay over the balance, if any, which may be due to Johnson's estate; and that it is impossible for him to comply with the requirements of the bill, without going to Cape Haytien, especially as Brice is now dead.

*Oct. 16th*      *Webster*, in behalf of Nazro, observed that the bill in equity was founded upon *St.* 1823, *c.* 140, giving authority to this Court to hear and determine in equity disputes between

partners and their representatives. No particular process is given by this statute, but it authorizes such as may be necessary or proper to carry it into effect. The *St.* 1817, *c.* 87, however, provides that a bill in equity, in the cases there specified, " may be inserted in a writ of attachment and such writ be served as other writs of attachment are by law to be served ;" and it will be argued that this provision warrants the arrest in the case before the Court. These words are evidently borrowed from *St.* 1798, *c.* 77, prescribing the mode of bringing a bill in equity to redeem land under mortgage, and of serving it upon the mortgagee. No one can suppose that in such a case an arrest and holding to bail would be proper. The object is to enable the *debtor* to recover the land, and no judgment can be given against the mortgagee which could be executed against bail. A judgment can be rendered against bail only where there has been a judgment for damages against the principal. Holding to bail would be alike incongruous in the cases arising under the statutes of 1817 and 1823. What would be the liability of bail upon a decree against a trustee to account or to convey land, or upon a decree for the specific performance of a contract ? So in the present case ; the prayer of the bill is, that the defendant may be ordered to account ; suppose he refuses ; he will be in contempt, but can his bail be charged ? When a balance is struck between partners, an action at law will lie to recover it, in which the defendant may be arrested ; but there is no reason to think that this administrator can be informed that there is a balance due to his intestate, and until the defendant shall account, there is no possibility of getting a judgment against his bail.

Nor are the words used in the statute of 1798 and 1817 incapable otherwise of a reasonable construction. The most common mode of serving writs of capias and attachment is by giving notice and making a nominal attachment, and as the chancery process of subpœna was not familiar in our practice, it may well be presumed that the legislature used the words in question merely to point out a mode of giving notice.

But the statute of 1823 does not contain these words : it

*Common-wealth
v.
Sumner.*

362

makes ample provision for its own execution without them; and there may be good reason, where the object of a partner is only to get an account, that the defendant should not be arrested, even if the statute of 1817 allows an arrest of a fraudulent trustee. A partner who knows himself to be indebted to the firm may bring his bill for an account merely to quiet his estate, and it would be strange if he might arrest his creditor.

By the statute of 1823 the Court have power to make such decrees as equity shall require. The first decree which it requires here is, that the arrest be dissolved and the defendant permitted to go to Hayti to settle the partnership concerns. If the prayer of the bill were granted, it would defeat the rights of both parties. The surviving partner alone has the right to collect the debts due to the firm. A receiver appointed by this Court would have no authority in Hayti.

If this were a suit at common law, the Court would have power to dissolve the arrest on account of excessive bail being required, or at least they might reduce the amount of bail. The defendant has been guilty of no default. He is ready to exhibit the books and to settle an account in Hayti as soon as practicable. Holding him to bail prevents his settling an account, for his bail would not let him go out of the country. Under the circumstances of this case then any amount of bail is excessive. *Jones* v. *Kelly*, 17 Mass. R. 116. It is apprehended that it is competent to this Court to prevent an arrest in any case, where there is not preliminary proof of a debt; and this is necessary in order to preserve the process from abuse.

Though a writ of attachment and a capias are commonly united in our forms, they mean different things. Thus a trustee process is a writ of attachment only, and not a capias. So administrators are not to be held to bail on a writ of attachment.

*Cushing, pro se.* The bill requires not only that the defendant shall account, but that he shall be adjudged to pay the balance which shall be found to be due. It is true that the precise sum in which he is indebted is not specified, and

the reason is, that the defendant alone can furnish the means of ascertaining that sum.

The question whether the suit was properly instituted, is to be determined upon the statute of 1817. By *St.* 1784, *c.* 28, a capias is a writ of attachment, and the officer must serve it according to its precept, that is, for want of property to be attached, he is to take the body of the defendant. The service is indeed frequently made by a nominal attachment, but that is merely through the indulgence of the plaintiff. It is said that the words in the statute of 1817 are copied from that of 1798, under which an arrest would not be proper ; but if they occur in a previous statute where a literal obedience to them is impracticable, and resort must be had to construction, it does not follow, that in a subsequent statute where such obedience is practicable, they are to receive the like interpretation. Various inconveniences have been suggested, but unless the statute is ambiguous, the argument *ab inconvenienti* will not avail. If the statute in question is constitutional, it is not to be denied all virtue, because there may be difficulties in enforcing it against bail. The Court having promulgated no rules for carrying into effect the statute of 1823, it must be inferred that the former rules made in 1818, and in which the mode of service pointed out in the statute of 1817 is recognised as constitutional, were considered applicable. 14 Mass. R. 466, rules 4 and 6.

**364**

The principles of the common law in relation to the construction of statutes, will show that the proceeding on the part of the plaintiff was correct. All acts *in pari materiá* are to be taken together, as if they were one law. *Ailesbury* v. *Pattison*, 1 Doug. 30 ; *Terry* v. *Foster*, 1 Mass. R. 150 ; *Church* v. *Crocker*, 3 Mass. R. 21 ; *Holland* v. *Makepeace*, 8 Mass. R. 423 ; *Somerset* v. *Dighton*, 12 Mass. R. 385 ; *People* v. *Utica Ins. Co.* 15 Johns. R. 380 ; *Holbrook* v. *Holbrook*, 1 Pick. 254 ; *Pearce* v. *Atwood*, 13 Mass. R. 344. Where an action founded upon one statute is given by a subsequent statute to a new case, every thing annexed to the action by the first statute is likewise given. Bro. *Waste, pl.* 68. A statute shall be extended to cases provided by a subsequent statute, when they come within the same reason

*Vernon's case,* 4 Co. 4 ; *Moore's case,* 2 Ld. Raym. 1028 ; Com. Dig. *Parliament,* *R,* 13, 15, 17 ; 6 Bac. Abr 382 387, *Statute,* *I,* 3, 6 ; *Vere* v. *Sampson,* Hardr. 208, 211 ; Plowd. 82, 248, 363, 465 ; Co. Lit. 24 *b.* As the statute of 1817 conferred chancery jurisdiction on the Court in certain cases, giving the power to arrest, the same remedy applies to the cases comprehended by the statute of 1823, they being within the same mischief. These are remedial statutes and are to be construed liberally ; *Kensington* v. *Mansell,* 13 Ves. 253 ; Plowd. 57.

It is objected that to arrest the defendant on this bill in equity is a hardship ; but if the statutes in question had not been passed, the plaintiff would have been driven to his action of account, in which the defendant would in like manner have been subject to arrest. On the other hand, it would be a greater hardship on the plaintiff to be compelled to seek his remedy in a distracted country like Hayti.

The defendant objects that this proceeding is anomalous, and in reference to English practice it is so ; but the analogy to our own practice is to be regarded. Our law encourages obtaining security by attachments and arrests ; and it is the intent of the legislature that our chancery practice should conform as much as possible to our common law practice. In England the Court of Chancery would issue a *ne exeat regno* in the present case, but here the same object is effected by the shorter and more simple mode of an arrest.

If the Court think the amount of bail demanded is exorbitant, doubtless they may reduce it ; but they will first hear evidence upon the point. That they can dissolve the arrest, by virtue of the statute of 1823, is a broad position which it is apprehended cannot be maintained.

*Oct. 18th.* PARKER C. J. delivered the opinion of the Court. By the return of the officer to the writ of *habeas corpus,* it appears that Nazro was arrested on the process attached to the return, in which bail to the amount of 10,000 dollars was required, and that he was committed to prison and is now held by virtue of such arrest. The process on which he was arrested is in the form of a writ of attachment or capias, in which is inserted a bill in equity setting forth a copartnership heretofore existing

between the plaintiff's intestate, the defendant in the suit, and one Brice, in the island of Hayti or St. Domingo, and the advance of funds, to a certain amount, towards the joint stock, and praying for an injunction against the defendant in the suit against collecting the debts due to the company, for the appointment of a receiver, for an account, &c. The bill is founded upon *St.* 1823, *c.* 140. The question before us is, whether in virtue of this statute, or the statute of 1817, *c.* 87, the party against whom a suit in equity is instituted, can lawfully be arrested and held to bail, or be imprisoned for failing to give bail. It seems to be admitted, and justly, that without the provision in the first section of the statute of 1817, for the insertion of a bill or complaint in a writ of attachment, the process in a suit in equity would be by *subpœna* only, as in chancery suits in England, unless the Court, pursuant to the authority given by the same statute, shall have prescribed some other form of process. Had the statute omitted to prescribe any form of process, or to give any authority to the Court to make one, the bill as used in England in chancery proceedings, and the proceedings under it as there practised, would necessarily have been adopted here, for it would be presumed that the legislature having given jurisdiction, intended it should be exercised according to the most approved forms in that country, which had been the source from which this and other States in the union had derived their principles and practice in the administration of justice ; and it was without doubt expected that the Court here, on prescribing writs and processes to carry into execution this new jurisdiction, would conform to those which had been established in England, as near as would be consistent with that prompt administration of justice which it was desirable to attain. But the right and privilege were secured to the complaining party, to insert his complaint in a common writ of attachment ; and it was provided that such a writ should be served in the same manner as other writs of attachment were served ; and it is difficult to imagine why this provision was made, unless to enable the party to obtain security by attachment of property at least, and if this were the intent, it is not easy to see why the alternative of holding to bail, in case there is a failure of

365

property, should not apply in this case, as well as in attach ments in common law suits. We agree with the plaintiff in the suit, that there is no distinction in our statutes between a capias and writ of attachment; they are one writ with different powers, according to the will of him who uses them.

In a case therefore accruing under the statute of 1817 where the complaint should be inserted in such a writ, the argument would be very strong in favor of an arrest and hold-ing to bail, notwithstanding the extreme inconvenience of adopting such a procedure in regard to some of the subjects of equity jurisdiction given by this statute. And indeed we wish to reserve ourselves upon this question, when we con-sider the obvious inapplicability of an arrest and bail upon a bill praying for a specific performance of a contract, for we cannot discern how the bail could be charged with the judg-ment or decree in such a case; certainly they could be liable for nothing beyond the costs of such a suit. In regard to some trusts which are the subjects of like jurisdiction by the statute, the difficulty of charging bail would be not less glaring. And it may be found in some future case, that the inapplica-bility of bail to such subjects, and in relation to those which are provided for in the statute of 1798, c. 77, is so apparent as to require an opinion, that the legislature intend such a con-struction of the terms by which they authorize the insertion. But however this may be, we think the question now before us is to be settled upon quite different considerations. This suit, upon which Nazro was arrested, is founded entirely upon the statute of 1823. That statute is perfect in itself, and may be executed without reference to the statute of 1817. It would be perfect and complete as an act of legislation, if the statute of 1817 had never been passed. It states distinctly, in two sections, the subjects of jurisdiction, and in a third, gives to the Court authority to issue all such writs and pro-cesses as may be necessary or proper to carry into full effect the powers granted. If the Court should not have executed this power by prescribing suitable writs and processes, a bill according to forms approved in England and in other States in this country could have been sustained, so that the object of the legislature in passing this statute could have been carried

into effect without the aid of the statute of 1817. And it would seem that such was the intent of the legislature ; for how otherwise can it be accounted for, that power was given to the Court to issue writs, &c., when a similar power was given in the previous statute in the same words ? It is true this act is entitled an act in addition to an act for giving further remedies in equity ; but this expresses nothing more than that this act was part of the same system of jurisprudence, the act itself to which this is supposed to refer not being the original of the series, but referring by implication to the statute of 1798 ; for the act of 1817 is entitled an act for giving further remedies in equity. Although it is certainly correctly stated, that for the purpose of exposition and argument these several statutes may be taken together, and considered as one, they being as to the general subject of jurisdiction *in pari materiâ*, we think it does not follow that independent provisions of any one section are to be applied to all other sections, where the object of the enactment can be obtained without the aid of such application. Take for instance the first section in *St.* 1823, *c.* 140. It provides that in all cases where any goods or chattels, deed, bond, note, bill, specialty, writing, or other personal property of any person or persons shall be taken or detained, &c., so that the same cannot be found, or come at, to be replevied, the justices &c., on application by bill, petition or complaint, may order the same to be delivered up, or compel such discoveries and disclosures and make such orders, injunctions and decrees, and upon such terms and conditions, as equity shall in such cases seem to require. Now can it be supposed that the legislature intended, that a bill founded on this section should be inserted in a writ of attachment which should be served by arresting the body of the party complained against and holding him to bail ? We think this could not be pretended, and yet a case arising under this section cannot be distinguished from one arising under the next section relating to partnerships. In either case there certainly is no necessity, and probably there was no intention, of referring to the statute of 1817 for the form of the process.

The argument in favor of the arrest would have more force,

Common
wealth
*v.*
Sumner.

'f the legislature, by the statute of 1817, had given general jurisdiction to the Court in matters of equity, and afterwards had given specific power in cases supposed not to be within the general authority. But it should be considered, that by that first statute the chancery jurisdiction of this Court is limited to cases of trust arising in three particular modes, and to cases of contract in writing where a party prays for a specific execution of the contract. And the provision of the statute is, that *in such cases*, that is, in cases of trusts and written contracts, the bill or complaint may be inserted in a writ, and served, &c. Here by the very words of the statute is a limitation of the privilege of converting a bill in equity into a capias or attachment; and it cannot be successfully argued, that a subsequent statute which extended the jurisdiction to other subjects, and which provided the means of its own execution, is to be modified by this, which gives a novel mode of process in the specific cases to which alone it refers. Possibly under the authority given to the Court to issue such writs and processes as may be necessary and proper to execute the power given them, they might adopt this process, if they thought it a suitable one ; but considering that by the rules adopted in reference to chancery jurisdiction, the *subpœna* is established as the proper process, except in cases where the legislature have authorized a writ of attachment, and as that is not directly authorized in this statute, we should not incline to depart from the approved forms of chancery proceeding ; and particularly in a case where the liberty of the defendant seems to be essential to the interests of all the parties concerned in the copartnership.

It has been said, that in a suit at common law, on the same subject matter, the plaintiff in the suit may have his capias and arrest the defendant. This we do not deny, but it furnishes no reason for extending this power to a case to which it has not been applied by the legislature. Our attachment law and arrests without proof of debt, have often been viewed as stains on our system of jurisprudence, otherwise the subject of commendation. There are no reasons in policy or justice for extending them.

If the arrest of this person and detention from the place

of his business is thought to be important in the settlement of his accounts and securing any balance which may exist, the common law should have been resorted to, instead of a process in equity.

It has been argued that the severity of this process by arrest is no greater than would take place, if after filing the bill the complainant should apply for a writ of *ne exeat*, by which he might detain the respondent unless he should give security. But a writ of *ne exeat* would not be granted without proof of debt, and probably not without a hearing and a consideration of the circumstances which might render the granting of such writ unreasonable.

But whatever may be the complainant's rights in the due course of equity process, it is sufficient for this case, that we are of opinion that the present process is not authorized by the laws of the commonwealth. The person brought before us must therefore be discharged.[1]

Common-
wealth
*v.*
Sumner.

---

[1] A general provision regulating the mode of commencing suits in equity, has been introduced into the Revised Statutes. See *c.* 90, § 117, 118.

In reference to the writ of *habeas corpus* as employed in the above case, see Revised Stat. *c.* 111, § 1, 2; 1 Chitty on Crim. Law, (3d Amer. ed.) 127, n. 41.